UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUSSEIN ALI KIETTY,<br><br>   Plaintiff,<br><br>  v.<br><br>A. WALKER, et al.,<br><br>   Defendants. | Case No.: 1:13-cv-00312-SAB (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF<br><br>[ECF No. 106] |

  Plaintiff Hussein Ali Kietty is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 302.

  Currently before the Court is Plaintiff's motion for an emergency permanent injunction, filed April 5, 2017. Defendants filed a response on April 21, 2017.

**I.**

**DISCUSSION**

  A preliminary injunction should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. "A preliminary injunction … is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of right before judgment." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). A preliminary injunction represents the exercise of a far

reaching power not to be indulged except in a case clearly warranting it. Dymo Indus. V. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc., v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008). In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

In his April 5, 2017 motion, Plaintiff seeks a permanent injunction based on alleged retaliation by Defendants. Plaintiff contends that a search of his cell was conducted on behalf of Defendant Deathriage and others to retaliate for this action. (Mot. at 2, ECF No. 106.) More specifically, Plaintiff alleges that on March 14, 2017, his cell was searched by the Institutional Security Unit who confiscated his mail and photographed legal documents pertaining to this case. Plaintiff alleges his cell was searched again on March 15, 2017, by non-Defendant, officer Shallenverh who stated she was advised to conduct the search by her supervisor. Plaintiff attaches three inmate declarations to support his contention that his cell was searched by prison officials in an effort to confiscate and/or photograph his legal materials pertaining to the instant action.

Defendants, by way of counsel, have responded to Plaintiff's motion and submit the following:

On April 11, 2017, I spoke with Correctional Officer Marmaduke, from the SATF Prison Investigative Services Unit (ISU), regarding the search of Plaintiff's cell on March 14, 2017. The Officer informed me that ISU was instructed to search Plaintiff's cell by the Office of Occupational Safety, which is a division of the California Department of Corrections and Rehabilitation (CDCR). Specifically, ISU was asked to photograph material that relates to an outside investigation into a radicalized prison group. In compliance with orders, the Officer photographed books, Plaintiff's tattoos, and other miscellaneous records. Plaintiff was then informed that the search was due to an outside investigation and permitted to return to his cell. The Officer confirmed that no legal material was photographed, no items were confiscated, he had no knowledge of any lawsuit Plaintiff was involved in, and that no mention of a lawsuit was made by the Office of Correctional Safety when the cell search was requested. Officer Marmaduke is unaware of any search of Plaintiff's cell that occurred after March 14, 2017.

2

I also spoke to the Special Agent from the Office of Correctional Safety, Criminal Intelligence and Analysis Unit, who ordered the search of Plaintiff's cell. The Agent confirmed that the Office of Correctional Safety is conducting an investigation into the formation of a radicalized prison group, and items from Mr. Kietty's cell were photographed in furtherance of that investigation. The Agent also confirmed that, of the items photographed, none were legal material, that he was not aware of any lawsuit that Mr. Kietty was involved in, that he does not even known who Officer Deathriage is, and that Mr. Kietty is not the focus of the investigation. Other than the search he ordered on March 14, 2017, the Agent is unaware of any other search of Plaintiff's cell.

On April 14, 2017, I spoke to inmates Bradford, Stanford, and Williams, who signed declarations in support of Plaintiff's motion. All three of the inmates claimed to have seen ISU officers arrive and photograph items from the Plaintiff's cell on March 14, 2017. Though, all three of the inmates confirmed that they were not able to see whether the items that were photographed were legal material because they were too far away to read any writing on the envelopes or see what type of records were present. Therefore, all three of their declarations are inaccurate in that regard. One inmate confirmed that Plaintiff and his cellmate were placed in the shower area while the cell was being searched, and that from the shower area, Plaintiff also would not have been able to see what items were being photographed.

None of the inmates saw any items confiscated, and none of them heard any officer mention a lawsuit or Office Deathriage. To the contrary, inmates Stanford and Williams heard the officers respond to Plaintiff by telling him that they were just "following orders." All three inmates informed me that they only became aware of this lawsuit and the allegation that the search was retaliatory from Plaintiff himself.

Inmate Williams claims that he witnessed the second search of Plaintiff's cell on March 15, 2017, by a female correctional officer, and stated that this search seemed to be routine because it was conducted by the regular correctional officers, not ISU, and that the other inmates' cells were searched as well. He did not see the officers confiscate anything from Plaintiff's cell. Neither inmate Bradford nor inmate Stanford witnessed any search of Plaintiff's cell on March 15, 2017, they only heard about it afterwards from Plaintiff. Therefore, their declarations are inaccurate in that regard as well.

(Mot. at 2-3, ECF No. 109.)

///

///

///

///

///

///

///

3

Based on the investigation and information provided by Defendants' counsel, the March 14, 2017, search was conducted for an independent investigation and Plaintiff was not the focus of such investigation. Further, the inquiry by Defendants' counsel did not reveal any search on March 15, 2017, by the ISU. Therefore, given the inquiry and response by Defendants' counsel, there is no evidence before the Court that Plaintiff's legal property was photographed or that items were confiscated, and Plaintiff's motion for injunctive relief is denied.

IT IS SO ORDERED.

Dated: **May 5, 2017**

UNITED STATES MAGISTRATE JUDGE